United States District Court
Southern District of Texas
**ENTERED**
October 27, 2016
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL KORS, L.L.C, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:15-cv-0844 |
| | § | |
| HERNANDEZ INTERNATIONAL | § | |
| INC. d/b/a ALEX TRADING, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

## TABLE OF CONTENTS

I.    Introduction ................................................................3

II.   Background ................................................................5

      A.   Factual Background ................................................5

      B.   Procedural History ................................................12

III.  Legal Standard ................................................................13

IV.   Analysis ................................................................15

      A.   Hernandez's Motion for Sanctions Based on Spoliation ...................15

      B.   Hernandez's Motion for Summary Judgment ...................22

      C.   Hernandez's Motion for Continuance ...................23

      D.   Kors' Motion for Summary Judgment ...................26

            1.   Evidentiary Objections ...................26

a.    Hernandez's Motions to Strike the Affidavits of the
ISC Investigators and Kors' Assistant General
Counsel ........................................................................26

i.    Affidavits of the ISC Investigators ......................27

ii.   Affidavits of Erica Weiner ..................................32

b.    Kors' Motion to Exclude Expert Testimony of
Michael Santoni ..............................................................33

2.    Analysis ..................................................................................41

a.    Trademark Infringement under the Lanham Act ............43

i.    Ownership and Use in Commerce.........................44

ii.   Authenticity of Goods and Likelihood of
Confusion ............................................................44

b.    Liability ..........................................................................48

i.    Collateral Estoppel ..............................................48

ii.   Vicarious Liability................................................51

iii.  Direct Liability ....................................................54

E.    Remedies ................................................................................................57

V.   Conclusion and Order ........................................................................................59

## MEMORANDUM AND ORDER

Plaintiff Michael Kors, L.L.C. ("Plaintiff" or "Kors") brings this trademark infringement suit against Defendants Hernandez International, Inc., Alex International,[1] and Leticia Luquez Cordero (collectively, "Defendants" or "Hernandez"). The parties have filed various motions. As described below, the Court grants Plaintiff Kors' motion for partial summary judgment in limited part

---

[1]   Kors' submissions to the Court identify Does 1-10 as defendants. However, other than a single reference to Does 1-10 in the First Amended Complaint [Doc. # 18], ¶ 10, Kors does not address those parties. Does 1-10 are dismissed from this case for Plaintiff's failure to serve and prosecute them.

2

on certain elements of the trademark infringement and related claims, but otherwise denies the motion.  The Court grants Kors' motion to strike Hernandez's expert, Michael Santoni.  The Court also denies Defendants' motions on spoliation, and grants in part and denies in part Defendants' motions to strike certain affidavits filed by Kors.

## I.   <u>INTRODUCTION</u>

Hernandez International and Alex International [2] (together, "Alex Trading") operate under the name "Alex Trading," and conduct business at two locations in Houston, Texas: 11014 Airline Drive and 6855 Harwin Drive.[3]  Alex Trading sells wholesale and retail various types of merchandise, such as perfumes, handbags, shoes, luggage, jewelry, sunglasses and watches.[4]

Kors has filed a Motion for Partial Summary Judgment, on the issue of "liability" only, on certain of its federal and state trademark infringement and

---

[2]   Kors brought suit against "Alex International, an unknown business entity d/b/a Danny's Handbags."   According to Defendant Alex International, Danny's Handbags & Accessories, Inc. operated until 2012 out of a since-shuttered store on Airline Drive.  Alex International, Inc. conducted business at 6855 Harwin from February 2008-February 2013.   In February 2013, Cordero closed Alex International, Inc., and converted the 6855 Harwin location into a second location of Hernandez International, Inc., d/b/a Alex Trading.  The Defendants have not raised any objections to Alex International as party to this case.

[3]   Exh. C to Kors SJ Motion, Declaration of Joel Voyles [Doc. # 35-4] ("Declaration of Joel Voyles (second set)"), at ¶ 6.

[4]   Exh. B-10 to Kors SJ Motion, Deposition of Cordero ("Cordero Deposition") [Doc. # 35-3], at 18:10-15.  Cordero was deposed individually and, pursuant to Federal Rule of Civil Procedure § 30(b)(6), in her representative capacity. *Id.* at 2.

unfair competition claims against Alex Trading ("Kors SJ Motion") [Doc. # 35].[5]
Kors also seeks to exclude the testimony of Hernandez's proffered expert, Michael
Santoni [Doc. # 36].[6]

Also pending before the Court is Hernandez's "Motion for Sanctions for
Spoliation of Evidence, No-Evidence Motion for Summary Judgment, and in the
Alternative, Motion for Continuance" (the "Spoliation Motion") [Doc. # 34], and
motions to exclude the testimony of four of Kors' witnesses[7] [Docs. # 31, # 32,
# 33, # 41-2].[8]

All motions are now ripe for determination. After carefully considering the
parties' briefing, all matters of record, and the applicable legal authorities, the
Court **denies** the Spoliation Motion, **denies in part and grants in part**
Hernandez's Motions to Strike the Testimony of Ralph Richard, Jr., Stephanie
Voyles and Joel Voyles, **denies** Hernandez's Motion to Strike Kors' Partial

---

[5]     Hernandez filed a Response to the Kors SJ Motion ("Response to Kors SJ
        Motion") [Doc. # 41]. Kors filed a Reply in support of its Motion ("Kors SJ
        Reply") [Doc. # 43].

        Hernandez filed a Motion for Leave to File Objections and a Sur-Reply, objecting
        to supplemental affidavits attached to the Kors SJ Reply as new evidence [Doc.
        # 45]. Kors opposed this filing [Doc. # 46]. The Court denied in part and granted
        in part Hernandez's Motion, and denied Kors' request to respond to the Sur-Reply.
        *See* Order [Doc. # 47]. Hernandez filed its Sur-Reply separately in accordance
        with the Court's Order [Doc. # 48].

[6]     Hernandez has responded [Doc. # 42], and Kors replied [Doc. # 44].

[7]     Hernandez objects to three of the witnesses as giving expert testimony without
        proper disclosure and foundation. Kors does not intend any of the three to testify
        as experts under Federal Rule of Evidence 702. *See* Section IV(D)(1)(a)(i), *infra*.

[8]     Kors has responded to both the Spoliation Motion and the motions to exclude
        [Docs. # 37, # 38, # 39, # 40, # 43].

Summary Judgment Evidence with respect to the affidavit of Erica Weiner, and **grants in part** but otherwise **denies** that Motion with regard to the affidavits of Joel Voyles and Stephanie Voyles.   The Court further **grants** Kors' Motion in Limine to Exclude the Expert Testimony of Michael Santoni.   Finally, the Court **denies in part** and **grants in limited part** Kors' Motion for Partial Summary Judgment.

## II.   BACKGROUND

### A.   Factual Background

Kors, founded in 1981 by designer Michael Kors, is a publicly-traded lifestyle and apparel company with a global presence in approximately 100 countries.[9]   Kors offers two primary collections: a luxury "Michael Kors" line, and the newer, less high-end "MICHAEL Michael Kors" collection, first introduced in 2004.[10]   Both lines include accessories, footwear, and apparel, though MICHAEL Michael Kors focuses on the first of these items.[11]   In 2014, Kors amassed over two billion dollars in revenue related to its retail, wholesale and licensing operations in North America.[12]

Kors owns numerous federally registered trademarks.[13]   They include

---

[9]   Exh. A to Kors SJ Motion, Declaration of Erica Weiner [Doc. # 35-2] ("First Declaration of Erica Weiner"), at 3 ¶ 8; Kors First Amended Complaint [Doc. # 18], at 3 ¶ 11.

[10]   *See* First Declaration of Erica Weiner [Doc. # 35-2], at 1 ¶ 2; Kors Amended Complaint [Doc. # 18], at ¶ 13, ¶ 14.

[11]   Kors Amended Complaint [Doc. # 18], at ¶ 13, ¶ 14.

[12]   *See* First Declaration of Erica Weiner [Doc. # 35-2], at ¶ 9.

[13]   *Id.* at 2-3.

MICHAEL KORS, MICHAEL MICHAEL KORS, and MK MICHAEL KORS (collectively, the "Kors Marks").[14]   Used exclusively by Kors and its licensees,[15] the Kors Marks are valid, subsisting, enforceable, and have never been abandoned.[16]   Nine of the Kors Marks are incontestable.[17]   Kors has spent tens of millions of dollars advertising its goods and associated trademarks, and sells products bearing the Kors Marks throughout the United States, including in over 300 Michael Kors boutiques, on its website www.michaelkors.com, and through other retailers and department stores.[18]   Kors advertises to consumers via a range of media, including through emails, print advertising and catalogues.[19]

Kors, along with other companies, retains Investigation Services Company ("ISC") to investigate violations of Kors' intellectual property.[20]   As part of this effort, Kors trains ISC investigators to identify counterfeit Michael Kors products,[21] and authorizes ISC to identify counterfeit merchandise on Kors' behalf

---

[14]   *Id.*  The Kors Marks are registered for use in various classes, including those covering apparel and handbags.

[15]   Kors licenses the Kors Marks for use with respect to products including fragrances, cosmetics, and eyewear.  *Id.* at ¶ 9.

[16]   *Id.* at ¶ 4.

[17]   Exh. B-1 to Kors SJ Motion, Declaration of Cindy Chan [Doc. # 35-3], at ECF 8, ECF 19, ECF 30, ECF 37, ECF 42, ECF 50, ECF 58, ECF 62, and ECF 71.

[18]   First Declaration of Erica Weiner [Doc. # 35-2], at ¶ 5, ¶ 6, ¶ 10.

[19]   *Id.* at ¶ 11.

[20]   Declaration of Joel Voyles (second set) [Doc. # 35-4], at ¶ 2.

[21]   *Id.* at ¶ 4.  Kors also provides ISC investigators with printed materials to use to authenticate goods they encounter in the field.  *Id.*

while assisting with criminal investigations.[22]

This dispute arose in connection with one such operation.  On November 16, 2013, ISC investigators accompanied Houston Police Department ("HPD") officers and Homeland Security Investigations ("HSI") agents on raids of Alex Trading's two locations.[23]  Prior to that date, undercover HPD officers purchased allegedly counterfeit items from Alex Trading.[24]  Based on those purchases, HPD obtained a criminal seizure order and law enforcement seized allegedly counterfeit merchandise.[25]  ISC's role was to assist HPD in the execution of that seizure order.[26]

---

[22]  Exh. A to Kors SJ Reply, Declaration of Erica Weiner [Doc. # 43-2] ("Declaration of Erica Weiner (third set)"), at ¶ 4.

[23]  Exh. C-7 to Kors SJ Motion, ISC Report dated November 22, 2013 ("ISC November 22, 2013 Report") [Doc. # 35-4], at 1-3.

The ISC November 22, 2013 Report appears in multiple filings.  For ease of reference the Court uses the page numbers of the actual Report, rather than ECF number.

[24]  On November 1, 2013, ISC subcontractor Ralph Richard met with HPD to assess whether items HPD purchased undercover from the Alex Trading Airline location, including a Kors-trademarked handbag, were counterfeit.  At or about that time, HPD advised ISC that a criminal action was pending.  *See* Exh. E to Defendants' Spoliation Motion, ISC Report dated November 5, 2013 [Doc. # 34-5]. Defendants object to the Richard affidavit.  The objection is **granted in part and denied in part**.  *See* Section IV(D)(1)(a)(i), *infra*.

On November 15, 2013, ISC investigator Stephanie Voyles examined items HPD purchased undercover from Alex Trading.  *See* ISC November 22, 2013 Report [Doc. # 35-4], at 1.

[25]  *See* ISC November 22, 2013 Report [Doc. # 35-4], at 2-4.

[26]  Exhibit B to Kors SJ Reply, Declaration of Joel Voyles [Doc. # 43-3] ("Declaration of Joel Voyles (third set)"), at 3 ¶ 7.

7

On November 16, 2013, ISC investigators accompanied HPD officers and HIS agents to the Alex Trading locations.[27]  At each location, HPD officers entered first to secure the area.[28]  HPD detained a total of eight individuals found at Alex Trading, five of whom HPD charged with criminal violations of trademark counterfeiting.[29]  Of those five, three were Alex Trading employees: Sandra Yaneth Duran (saleswoman and manager of both Alex Trading locations), Isabel Jimenez-Flores (saleswoman) and Carlos Duran-Hernandez (warehouse caretaker).[30]  A fourth, Rene Ayaly-Guido, is Sandra Duran's nephew.[31]  Cordero, the owner, was not present, and was not charged in subsequent criminal proceedings.[32]

ISC investigators followed HPD into each of the Alex Trading locations after it had been secured.[33]  Alleged counterfeit merchandise bearing the Kors Marks was on display and offered for sale to the public in both locations.[34]  The ISC investigators identified approximately 29,000 items as counterfeits, and HPD

---

[27]     *Id.*

[28]     ISC November 22, 2013 Report [Doc. # 35-4], at 3.

[29]     *Id.* at 4, ¶ 10, ¶ 11.

[30]     Cordero Deposition [Doc. # 35-3], at 29:18-30, 33:7-20, 34:10-21.

[31]     *Id.* at 35:6-20.

[32]     *Id.* at 36:21-25.

[33]     ISC November 22, 2013 Report [Doc. # 35-4], at 3.  The Airline location also had a warehouse in the back of the store.  Cordero Deposition [Doc. # 35-3], at 34:20-25, 35:1-3.

[34]     Declaration of Joel Voyles (third set) [Doc. # 40-5], at 3 ¶ 9.

seized those items.[35]   The ISC investigators inventoried the seized goods under HPD's supervision, and photographed items that bore Kors Marks.[36]   According to the ISC inventory, the accuracy of which Hernandez disputes, HPD seized 20,478 alleged Michael Kors counterfeits from Alex Trading.[37]   They included 17,744 loose metal labels bearing Kors Marks and thousands of other Kors items, including handbags, wallets, hats, belts, T-shirts, coin purses, watches, duffle bags, sunglasses, sweat suits, earrings, belt buckles, scarfs, and wristlets.[38]   Additionally, HPD and ISC found an embossing machine at the Alex Trading Airline location, as well as a "MICHAEL KORS" stamp that could be used with the machine.[39]

HPD deemed the seized items evidence in potential criminal cases but lacked sufficient storage capacity.   HPD therefore requested that ISC store a portion of the evidence.[40]   ISC complied, storing the items in a secure U-Haul

---

[35]   *Id.*, at 4 ¶ 10- ¶11; ISC November 22, 2013 Report [Doc. # 35-4], at 3.

[36]   ISC November 22, 2013 Report [Doc. # 35-4], at 3; Declaration of Joel Voyles (third set) [Doc. # 40-5], at 4 ¶ 10 - ¶ 11.

[37]   ISC November 22, 2013 Report [Doc. # 35-4], at 2.  Kors does not seek summary judgment on and the Court does not address at this time the issue of the number of allegedly counterfeit or illegally marked Kors-labeled items found.  It is noted, however, that Kors' First Amended Complaint, which includes a trade dress infringement claim, states that MICHAEL Michael Kors goods display a repeating pattern of the letters "MK" in bold font, a pattern that allegedly constitutes protected trade dress.  *See* Kors First Amended Complaint [Doc. # 18], at 5 ¶ 18, 6 ¶ 19-¶ 22].  Plaintiff does not seek summary judgment on its trade dress infringement claim.  It is unclear whether the inventory includes items that display the trade dress but not the Kors Marks, and what significance, if any, Plaintiff attaches to the distinction.

[38]   ISC November 22, 2013 Report [Doc. # 35-4], at 2.

[39]   Declaration of Joel Voyles (third set) [Doc. # 43-3], at 5 ¶ 12.

[40]   *Id.* at 5 ¶ 13.

storage unit.[41]  ISC, on or about November 22, 2013, described in a report the raids that had occurred six days earlier (the "ISC November 22, 2013 Report").[42]

In the year following the raids, three of the arrested employees—Sandra Duran, the acting manager of Alex Trading during 2013; Isabel Jimenez-Flores, a saleswoman; and Carlos Duran-Hernandez, the caretaker of the Airline location warehouse[43]—pleaded guilty to trademark counterfeiting under Texas law, as did Duran's nephew, Rene Ayala-Guido.[44]  All confessed to having displayed, sold, offered for sale and possessed with intent to sell two categories of items—duffle bags and handbags—that bore counterfeit marks.[45]  The pleas do not specify which

---

[41]    *Id.*

[42]    ISC November 22, 2013 Report [Doc. # 35-4], at 1.  The Report identifies the number of alleged counterfeit Kors items HPD seized at each Alex Trading location and states that, at HPD's request, ISC stored a portion of the seized items as HPD evidence.

[43]    *See* Cordero Deposition [Doc. # 35-3] at 29-30, 33:7-20, 34:10-21.

[44]    Sandra Duran was convicted of a state felony for trademark counterfeiting on May 16, 2014; Jimenez-Flores and Duran's nephew, Ayala-Guido, each pleaded guilty to a reduced misdemeanor for the same offense on November 6, 2014.  *See* Exh. B-5 to Kors SJ Motion, Judgment of Conviction of Sandra Yaneth Duran [Doc. # 35-3], at ECF 95; Exh. B-6 to Kors SJ Motion, Plea of Rene Geovanni Ayala-Guido [Doc. # 35-3], at ECF 99; Exh. B-7 to Kors SJ Motion, Plea of Isabel Marina Jimenez-Flores [Doc. # 35-3], at ECF 109; Cordero Deposition [Doc. # 35-3] at 35:6-20.

[45]    *See* Exh. B-5 to Kors SJ Motion, Judgment of Conviction of Sandra Yaneth Duran [Doc. # 35-3], at ECF 95; Exh. B-6 to Kors SJ Motion, Plea of Rene Geovanni Ayala-Guido [Doc. # 35-3], at ECF 99; Exh. B-7 to Kors SJ Motion, Plea of Isabel Marina Jimenez-Flores [Doc. # 35-3], at ECF 109.  Carlos Duran-Hernandez's plea was not provided, but each of the guilty pleas in the record identify him as a co-defendant.

counterfeit marks were the bases of the guilty pleas.[46]

Subsequently, HPD sent ISC a copy of an Agreed Order that already had been entered by the 232 District Court, Harris County, Texas, on November 6, 2014, ordering that "all evidence and contraband held by the Houston Police Department and its designate" was to be destroyed (the "Destruction Order").[47] The Destruction Order apparently was agreed to by the criminal defendants and the State of Texas through the Harris County District Attorney.[48]   There is no indication that either Kors or ISC was consulted before the Order was entered or that these companies had any knowledge about it until ISC received a copy, which was sometime on or before November 18, 2014.  On November 18, 2014, ISC investigators Joel Voyles and Ralph Richard loaded a U-Haul with the inventory HPD had asked ISC to store, and destroyed it.[49]  By report dated two days later, November 20, 2014 (the "ISC November 20, 2014 Report"), ISC informed Kors that it had destroyed the alleged counterfeits pursuant to the state court's Destruction Order.[50]   Defendants argue that, because the seized items were destroyed at the end of the criminal proceeding, it is impossible to confirm that the items were indeed counterfeits, and to verify the accuracy of the inventory.

---

[46]   Exh. B-5 to Kors SJ Motion, Judgment of Conviction of Sandra Yaneth Duran [Doc. # 35-3], at ECF 95; Exh. B-6 to Kors SJ Motion, Plea of Rene Geovanni Ayala-Guido [Doc. # 35-3], at ECF 99; Exh. B-7 to Kors SJ Motion, Plea of Isabel Marina Jimenez-Flores [Doc. # 35-3], at ECF 109.

[47]   Destruction Order [Doc. # 39-1], entered by the 232 District Court, Harris County, November 6, 2014, at ECF 149.

[48]   *Id.*

[49]   Exh. F to Defendants' Spoliation Motion, ISC Report dated November 20, 2014 [Doc. # 34-7], at 1.

[50]   *Id.*

## B.    Procedural History

Kors filed this case, *see* Complaint [Doc. # 1],[51] on April 1, 2015, and amended its complaint on July 20, 2015, to add Alex International as a Defendant. Kors now asserts claims for trademark infringement (Count I), trade dress infringement (Count II), false designation of origin and false designation (Count III), and trademark dilution (Count IV) under the Lanham Act; injury to business reputation or trademark under the Texas Business and Commerce Code § 16.103 (Count V)[52]; and, common law trademark infringement and unfair competition (Count VI) [Doc. # 18].

Hernandez answered the Amended Complaint [Doc. # 29] and discovery proceeded pursuant to an agreed docket control order.  Hernandez now seeks sanctions in connection with the destruction of the alleged counterfeit material, and seeks summary judgment on all claims, contending Kors has no evidence of any violation of law [Doc. # 34].  Hernandez, alternatively, seeks a continuance to develop more evidence on the spoliation and sanctions issues [Doc. # 34]. Hernandez also moved to strike the expert testimony of three ISC investigators [Docs. # 31- # 33].  Kors responded to Hernandez's Spoliation Motion, and to each motion to strike [Docs. # 37 - # 40].[53]

---

[51]    In its original Complaint, Kors asserted claims for: trademark counterfeiting, trademark infringement, false designation of origin, and trademark dilution, each under the Lanham Act; injury to business or reputation or trademark under Texas Business and Commerce Code § 16.29; and trademark infringement and unfair competition under Texas common law [Doc. # 1].

[52]    Kors asserts this claim under Tex. Bus. & Com. Code § 16.29, but that statute was superseded in 2012 by Tex. Bus. & Com. Code § 16.103.  See note 108, *infra*.

[53]    Kors Response to Spoliation Motion includes certain evidentiary objections.  *See* note 54, *infra*.

Kors moves for partial summary judgment on liability of the Alex Trading Defendants on its federal and state trademark infringement and unfair competition claims, as well as its state anti-dilution claim (Counts I, III, V and VI) [Doc. # 35]. Kors also seeks to exclude the testimony of Hernandez's proffered expert [Doc. # 36].

## III.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to his case and on which he will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.  56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

For summary judgment, the initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact."  *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012).  The moving party, however, "need not negate the elements of the nonmovant's case."  *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).  The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."  *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013). "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the nonmovant could or would

prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-13). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413); *accord, Little*, 37 F.3d at 1075. Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* Fed. R. Civ. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (internal citations and quotations omitted); *Williams v. Valenti*, 432 F. App'x 298, 302 (5th Cir. 2011).

## IV.   <u>ANALYSIS</u>

### A.   **Hernandez's Motion for Sanctions Based on Spoliation**[54]

---

[54]   Kors raised objections to various exhibits referenced in Hernandez's Spoliation Motion. *See* Exh. E to Kors Response to Spoliation Motion, Evidentiary Objections [Doc. # 40-7]. Kors objects to Exhibits D, E, and F insofar as Hernandez uses those exhibits to support alleged mischaracterizations of evidence, *see id.* at 2-3, and objects to Exhibits C, I-K, and M-N as inadmissible hearsay. *See id.* at 4-5. Kors also objects to Exhibit H because it lacks probative value, and Exhibit L as irrelevant. *See id.* at 4.

(continued…)

Hernandez contends that Kors spoliated evidence when the ISC investigators destroyed the alleged counterfeits HPD seized from Alex Trading.[55]   It asks the Court to sanction Kors severely in connection with the spoliation, by either imposing a death-penalty sanction of dismissal of Kors' claims, striking Kors' pleadings that rely upon the spoliated evidence, or ordering an adverse inference jury instruction.[56]   Hernandez contends that Kors' actions have at once denied it the ability to defend itself against Kors' claims and prevent Kors from adducing the evidence Kors needs to prove those claims.[57]

Spoliation "is the destruction or the significant and meaningful alteration of evidence." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010).   A party's duty to preserve evidence arises when the party has notice that the evidence is relevant to a given litigation or should have known that the evidence may be relevant.   *Id*.   In regard to spoliation that occurs before a case

---

(continued…)
As the Court does not rely on Exhibits C, D, E, H, J, K, L and N, Kors' objections to them are **denied as moot**.   The Court does rely on Exhibit F, but not for the reason on which Kors objects. Therefore, Kors' objection to Exhibit F likewise is **denied as moot**.

The Court considers Exhibit I regarding Hernandez's knowledge, as of March 8, 2016, that the seized materials had been destroyed.   Because Kors itself subsequently relies on Exhibit I in support of that same fact, Kors' objection with respect to Exhibit I is **overruled**. *See* Kors SJ Reply [Doc. # 43], at 8.

Finally, Kors' objection to Exhibit M incorporates by reference its Motion to Exclude the testimony of Michael Santoni [Doc. # 36].   The Court addresses this objection in Section IV(D)(1)(b), *infra*.

[55]   *See* Spoliation Motion [Doc. # 34], at 6-17.

[56]   *Id.* at 5.

[57]   *See* Section IV(B), *infra*.

is filed (but after such a duty attaches), federal courts may address such conduct through its inherent power to manage the litigation process. *Id.* at 611. Because "[t]he ultimate touchstone of inherent powers is necessity," *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1412 (5th Cir. 1993), courts exercise such power with restraint. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

A party seeking the sanction of an adverse inference based on spoliation must establish

(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed;

(2) the evidence was destroyed with a culpable state of mind; and

(3) the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Rimkus Consulting Grp.*, 688 F. Supp. 2d at 615-16.

In the Fifth Circuit, courts permit adverse inferences against or imposition of sanctions upon the spoliator only upon a showing of "bad faith" on the part of the destroying party. *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (quoting *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005)). "Bad faith" generally refers to destruction for the purpose of hiding adverse evidence. *See Guzman*, 804 F.3d at 713. Negligent destruction, as opposed to bad faith destruction, is inadequate grounds for a sanction. *See King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003).

**Control Over Items.**— As an initial matter, Kors provides evidence that it had no "control" over the stored items. At HPD's request, ISC arranged for storage of a substantial portion of the seized items. According to uncontroverted evidence submitted by ISC, all seized items were the State's evidence and were in

control of HPD.[58]  HPD, in coordination with the state court, had complete control regarding whether and how ISC was allowed to or in fact did interact with the stored items; any inspection of those items required HPD's permission.[59]  No evidence has been presented that Kors had control over or access to the items.

Hernandez argues that ISC's constructive custody is sufficient to establish Kors' control.  Hernandez's sole legal authority is a case decided by the Sixth Circuit, *In re Bankers Trust Co.*, 61 F.3d 465 (6th Cir. 1995).  This case is not applicable, as facts there are materially different from the circumstances at bar in several respects, not the least of which is that it involves a party's refusal to produce documents pursuant to a court order directed to it during discovery.  *See In re Bankers Trust Co.*, 61 F.3d at 467.[60]  In *In re Bankers Trust*, the Sixth Circuit noted that, for purposes of discovery requests under Federal Rule of Civil Procedure 34, legal ownership of a document is not determinative.  *Id.* at 469.  As Kors points out, it had neither legal nor physical control of the items.  Hernandez

---

[58]     Declaration of Joel Voyles (third set) [Doc. # 43-3], at 5 ¶ 13, 6 ¶ 19.

[59]     *Id.* at 6 ¶ 19.

[60]     In that case, petitioner Bankers Trust Company sought a writ of mandamus to vacate a discovery order requiring that it provide documents that were, according to the regulations of the Federal Reserve Board, the property of that Board. Bankers Trust argued that a discovery order inconsistent with governing regulation is erroneous as a matter of law.  In analyzing the petitioner's argument, the Sixth Circuit noted that, for purposes of Federal Rule of Civil Procedure 34, legal ownership of a document is not determinative, but also that federal regulations should be adhered to whenever possible.  The Sixth Circuit resolved the issue by concluding the Federal Reserve lacked authority to promulgate regulations in direct contravention of the Federal Rules of Civil Procedure.  *See In re Bankers Trust Co.*, 61 F.3d at 470.

18

thus has not carried its burden of persuasion on the issue of spoliation.[61]

Hernandez also argues that, even if Kors lacked control of the stored items, Kors breached a duty to preserve them.[62]  Hernandez cites the Fourth Circuit decision *Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001), for the following proposition:

> [t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation. … If a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving the evidence.[63]

*Silvestri*, however, is inapposite.  There, the plaintiff, Silvestri, a driver involved in an automobile accident, brought suit against General Motors ("GM") three years after the accident, arguing a faulty airbag was responsible for the severity of his injuries.  However, Silvestri's lawyer had retained two accident reconstructionists to examine the vehicle immediately after the accident, telling one the requested inspection was in anticipation of filing a suit against GM.  Three months later, the car's owner—who was not Silvestri—transferred the vehicle to his insurance company, which arranged for its repair. Three years later, Silvestri filed his suit against GM.  *See Silvestri*, 271 F.3d at 586.  The court found Silvestri

---

[61]     *See, e.g.*, *Condrey*, 431 F.3d at 203 (contrasting Georgia state law, under which spoliation claim raises a presumption against the putative spoliator, with Fifth Circuit practice that "permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith').

[62]     *See* Hernandez Sur-Reply [Doc. # 48], at 5.

[63]     *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001).

culpable for spoliation because he had anticipated litigation[64] but had failed to notify GM that the car would be repaired and did not grant GM access to it, despite having "had access to the vehicle, as his attorney … and his retained experts were given apparently unlimited access to the vehicle". *Id*.

Hernandez argues that Kors likewise had a duty to preserve evidence because Kors "knew of the merchandise after its seizure, knew that it was in possession and custody of ISC, and failed to preserve the evidence for future litigation."[65]  However, Hernandez has provided no evidence that Kors "reasonably anticipated litigation" in the form of its civil suit.  More significantly, even if Kors had reason to anticipate civil litigation against Defendants, the evidence is uncontradicted that Kors did not have control over or access to the items, and lacked power to grant Defendants such access.  Further, Kors establishes, again without any evidentiary contradiction, that it was unaware of the Destruction Order or any impending destruction.  Kors did not know about the Order until it received ISC's November 20, 2014 Report, explaining to Kors that the items already had been destroyed.[66]

*Bad Faith.*— Nor is there evidence that indicates Kors acted in bad faith. Kors' uncontroverted evidence is that it did not know the items were to be destroyed until after HPD and ISC had done so.  ISC destroyed the items pursuant to the state court's Destruction Order, and states that, at the time, it neither informed Kors of its plans nor knew Kors intended to file a civil action against

---

[64]   Indeed, Silvestri sued his lawyer for malpractice for failure to preserve the vehicle as evidence.  *Id*. at 592.

[65]   Hernandez Sur-Reply [Doc. # 48], at 6.

[66]   Declaration of Erica Weiner (third set) [Doc. # 43-2], at 2 ¶ 5.

Hernandez.[67]  Even if it could be argued that Kors (or ISC, if it could be said to have acted as Kors' agent while the merchandise was under HPD control) was negligent in not ensuring the items' safety or notifying Hernandez of the Destruction Order, spoliation has not been proven.   Negligent conduct is inadequate for Hernandez's purpose.  Evidence of bad faith is a prerequisite in the context of spoliation.[68]  *See Guzman*, 804 F.3d at 713.

On this record, Hernandez fails to establish spoliation.  Therefore, the Court **denies** Hernandez's request for sanctions on that basis.  Nevertheless, at trial the parties will be permitted to adduce evidence of the chronology of the seizure and

---

[67]     Declaration of Joel Voyles (third set) [Doc. # 43-3], at 7 ¶ 21.

[68]     The third prong of the spoliation test is that the destroyed materials were relevant to the issues in suit.  *See Rimkus Consulting Grp.*, 688 F. Supp. 2d at 615-16.  The party moving for spoliation must show that the material lost was relevant to the party's claims and that the party is prejudiced by the loss.  *See id.* at 616.  The alleged Kors counterfeits are clearly relevant.  Hernandez argues it is prejudiced by the alleged spoliation because Hernandez is deprived of the opportunity to show authenticity of the destroyed items, and it cannot evaluate Kors' alleged damages.  *See* Spoliation Motion [Doc. # 34], at 12.  Hernandez offers purported expert testimony of Michael Santoni in support of its position. *See* Section IV(D)(1)(b), *infra*.

The Court need not reach the relevance factor, because Hernandez fails to make the necessary showing on each of the first two spoliation elements, control and bad faith.  The Court notes, however, that Hernandez's contentions on authenticity ring hollow.  There is extensive evidence on the record regarding the authenticity, or lack thereof, of the seized items.  *See* Section IV(D)(2)(a)(ii), *infra*.  Hernandez has not meaningfully explained how it would show authenticity of the goods if they were available for inspection.

The issue of Kors' proof of damages, Hernandez's second argument on the relevance factor, will be addressed at trial.  It is possible that the permanent loss of the alleged counterfeits may pose issues with respect to accurately assessing damages.

the fact of destruction of the items prior to the filing of suit, as relevant to damages and, potentially, other issues.

### B.    Hernandez's Motion for Summary Judgment

Hernandez seeks summary judgment with respect to all of Kors' claims, arguing that, given the destruction of the alleged counterfeits, Kors has failed to produce any evidence supporting its causes of action.[69]   Hernandez refers to its motion as a "No-Evidence Motion for Summary Judgment."   "[T]he concept of a 'no evidence' summary judgment neither accurately describes federal law nor has any particular import in the vernacular of federal summary judgment procedure." *Royal Surplus Lines Ins. Co. v. Brownsville Independent School Dist.*, 404 F. Supp. 2d 942, 948 (S.D. Tex. 2005).   Though a "no evidence" motion for summary judgment is available in state court,[70] federal law contemplates a shifting burden that, as indicated, requires the nonmovant show a genuine issue of material fact for trial.   *See Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004).

Hernandez takes the position that Kors necessarily fails to present any evidence in support of its claims simply because the marked items no longer

---

[69]     *See id.* at 17-24.

[70]     Texas law provides:

> After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial ... The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

TEX. R. CIV. P. 166a(i).

exist.[71]  This position is mistaken.  Though the tangible items are unavailable, Kors points to ample evidence in the record that creates a genuine fact issue whether Alex Trading manufactured and sold the items Kors claims are counterfeit—for example, Cordero's testimony, in her individual and her representative capacity for Alex Trading, that the handbags she purchased did not display or otherwise include Kors' labels, and photographs and inventories of allegedly counterfeit Michael Kors products seized from Alex Trading.  The Court therefore **denies** Defendants' motion for summary judgement dismissing Kors' claims.

### C.    Hernandez's Motion for Continuance

In the alternative, Hernandez asks the Court to grant a continuance and create a new docket control order so that Hernandez may seek additional discovery related to the alleged spoliation.[72]  Specifically, Hernandez requests additional time to obtain document discovery in connection with the alleged spoliation, and to depose Kors' Assistant General Counsel, Erica Weiner, "all ISC investigators," including Joel Voyles, Stephanie Voyles, and Ralph Richard, and the HPD officers who participated in the raids on Alex Trading in 2013.[73]

This case is subject to a scheduling order [Doc. # 26].  Hernandez's request for an extension of time accordingly is controlled by Federal Rule of Civil Procedure 16(b), which "provides that once a scheduling order has been entered, it 'may be modified only for good cause and with the judge's consent.'"  *Marathon*

---

[71]    *See, e.g.*, Spoliation Motion [Doc. # 34], at 18 ("There is no evidence of the Federal Trademark Counterfeiting and Infringement because all alleged counterfeit merchandise has been destroyed and/or spoliated by Plaintiff, therefore Defendants' summary judgment must be granted.")

[72]    Spoliation Motion [Doc. # 34], at 24.

[73]    *Id.*

*Financial Ins., Inc. v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009) (quoting FED. R. CIV. P. 16(b)).  Rule 16(b) requires a party "show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Id.* (quoting *S & W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)).  To determine whether the moving party has established good cause, the Court considers the following four factors: (1) the explanation for the failure to complete discovery prior to the deadline; (2) the importance of the requested discovery; (3) the potential prejudice if discovery is reopened; and (4) the availability of a continuance to cure such prejudice.  *See id.*

Hernandez fails to establish that it is entitled to a continuance.  First, despite framing its request as a response to "recently discovered spoliation of evidence,"[74] Hernandez has not given reason for the failure to seek, let alone complete, this discovery prior to the agreed deadline.  Hernandez was fully aware of the alleged spoliation by March 8, 2016, when it sent Kors' counsel a letter stating that, with reference to the alleged spoliation, Hernandez planned to move for sanctions and summary judgment.[75]  Hernandez was on notice that the discovery period would and did end on July 6, 2016.  Hernandez had full opportunity to seek an extension of the deadline before it passed and before motions were filed, but did not do so.  Significantly, Hernandez also failed to take advantage of the two opportunities on which ISC investigators Joel Voyles and Ralph Richard made themselves available for deposition.[76]

---

[74]     *Id.*

[75]     Exhibit I to Spoliation Motion [Doc. # 34-10].

[76]     Exh. A to Kors Response to Spoliation Motions, Declaration of Cindy Chan [Doc. # 40-2], at 2-3, ¶ 10 - ¶ 13; Declaration of Joel Voyles (third set) [Doc # 43-3], at 7 ¶ 22.

Second, Hernandez only superficially addresses the issue of importance of the requested discovery.  The evidence of record includes the testimony of Cordero, the owner of Alex Trading, that, prior to 2013, the only Michael Kors items she purchased on behalf of Alex Trading were fragrances, which were not included among the stored items.[77]  During the November 13, 2013, raids on Alex Trading, the HPD seized an embossing machine, a "Michael Kors" stamp, and over 17,000 stand-alone "Michael Kors" labels from the Alex Trading locations, items that Michael Kors does not sell or otherwise make available.[78]  Identical labels were affixed to certain of the seized items.[79]  Finally, the seized items included Kors-branded goods in styles that Kors does not offer.[80]  To the extent Hernandez seeks additional information in order to argue that the destroyed items were not counterfeit, Hernandez nowhere explains why the requested depositions or other discovery would lead to evidence contrary to that of record.  Thus, Hernandez has not met the second element of the good faith test for a continuance.

Finally, Hernandez does not satisfy the last two elements, the availability of a continuance and prejudice from such a delay.  This dispute was filed in early 2015, and motions for summary judgment already have been filed. Reopening discovery at this point would cause unfair expense to Kors and unwarranted delay

---

[77]  *See* Cordero Deposition [Doc. # 35-3], at 57:12-16.  There is an issue about the authenticity of the Kors-labeled fragrances sold by Alex Trading.  The ISC inventories compiled on November 16, 2013, do not include any Kors fragrances. *See* note 144 and accompanying text, *infra*.

[78]  *See* Declaration of Erica Weiner (third set) [Doc. # 43-2], at 3 ¶ 8(d).  The embossing machine was found in the Airline location of Alex Trading.

[79]  *See, e.g.*, Declaration of Joel Voyles (second set) [Doc. # 35-4], at ECF 40, 42, 48, 60.

[80]  *See* Declaration of Erica Weiner (third set) [Doc. # 43-2], at 4 ¶ 8(c).

25

in resolution of the matter.  Docket call has been postponed once already.  There is no valid reason to do so again.  Hernandez's motion for continuance is **denied**.

### D.  Kors' Motion for Summary Judgment

Kors moves for partial summary judgment against Alex Trading, on the issue of liability only, with respect to its federal and state trademark infringement and unfair competition claims, as well as its state anti-dilution claim (Counts I, III, V and VI) [Doc. # 35].  Both parties have made evidentiary objections to proffered testimony and materials underlying the claims.  Hernandez challenges the affidavits of the ISC investigators and Kors' Assistant General Counsel, Erica Weiner.  Kors, in turn, objects to the testimony of Defendants' proffered expert, Michael Santoni.  The Court first addresses the evidentiary objections and then turns to the merits of the summary judgment motion.

#### 1.  Evidentiary Objections

##### a.  Hernandez's Motions to Strike the Affidavits of the ISC Investigators and Kors' Assistant General Counsel

In support of its positions, Kors submitted affidavits of ISC investigators Joel Voyles and Stephanie Voyles, both of whom assisted in HPD's November 16, 2013 raids on Alex Trading; ISC investigator Ralph Richard, Jr.; and Erica Weiner, Kors' Assistant General Counsel.  The record includes two or three versions of each affiant's affidavits, with each new version containing increasing specificity.[81]

---

[81]   Kors provided the Defendants, though not the Court, with affidavits of each of Joel Voyles [Doc. # 31-1], Stephanie Voyles [Doc. # 32-1], and Ralph Richards, Jr. [Doc. # 37-1] (collectively, the "first set" of affidavits").  The three affidavits in the first set are similar to one another.  In each, the ISC affiant states his or her training and qualifications with respect to authenticating apparel and accessories, identifies basic characteristics of counterfeit goods generally, and describes his or her role in connection with HPD's criminal investigation of Alex Trading.  *See* Exh. A to Motion to Strike Joel Voyles, Affidavit of Joel Voyles [Doc. # 31-1];

(continued…)

The Court deems each of Hernandez's objections to apply to all the affidavits Kors has submitted.[82]

### i.      Affidavits of the ISC Investigators

Hernandez first argues that the investigators seek to give expert opinions but none of these witnesses was designated as an expert.  Hernandez also argues that the investigators are not qualified as experts on the subjects on which they offer opinions, that their testimony is unreliable and irrelevant under Federal Rule of

---

(continued…)
Exh. A to Motion to Strike Stephanie Voyles, Affidavit of Stephanie Voyles [Doc. # 32-1]; Exh. A to Motion to Strike Ralph Richard, Jr., Affidavit of Ralph Richard, Jr. [Doc. # 33-1].

Kors later filed more detailed affidavits of Joel Voyles and Stephanie Voyles, as well as an affidavit of Weiner, in support of the Kors SJ Motion [Docs. # 35-2, # 35-4, # 35-5] (the "second set" of affidavits).  Hernandez objected to, and moved to strike, the second set of affidavits.  *See* Exh. A to Response to Kors SJ Motion, Defendants' Objections and Motions to Strike [Doc. # 41-2].

Kors then submitted in support of the Kors SJ Reply "supplemental" affidavits of Joel Voyles, Stephanie Voyles, and Weiner [Docs. # 43-2, # 43-3, # 43-4] (the "third set").  Kors also attached the third set of affidavits, as well as a second Ralph Richard, Jr. affidavit, to its Responses to Hernandez's Motions to Strike [Docs. # 37-1, # 38-1, # 39-1, # 39-2].  Hernandez requested leave to object to the third set of affidavits, *see* Docs. # 45 and # 45-1, which request the Court denied. *See* Order [Doc. # 47] and note 5, *supra*.

The second and third sets of Joel Voyles' and Stephanie Voyles' affidavits are more Kors-specific regarding the investigators' training and authentication methods. The third set is the most detailed, and, with respect to Joel Voyles' affidavit, provides some additional information regarding ISC's custody of the stored items.  The Court generally focuses on the contents of the third set for its analysis.  The reasoning and rulings that follow, however, are equally applicable to all three sets of affidavits.

[82]     *See* note 81, *supra*.

Evidence 702,[83] and their testimony is based on spoliated evidence.[84]  Hernandez objects to and moves to strike "all opinions, documents, photographs and declarations" the ISC investigators provide in support of the Kors SJ Motion.[85]

Kors acknowledges that it did not retain ISC to provide testifying experts and does not present any ISC investigator as an expert witness for this case.  Kors therefore did not identify those individuals as experts or provide expert reports, as required by Federal Rules of Civil Procedure 26(a)(2)(A) and (B).[86]  Rather, Kors asserts the investigators' testimony is based upon their personal knowledge and is admissible as the testimony of percipient witnesses under Federal Rule of Evidence 602, not expert testimony under Federal Rule of Evidence 702.[87]

---

[83]    A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts or data;
>
> (c)  the testimony is the product of reliable principles and methods; and
>
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

[84]    *See* Motions to Strike [Docs. # 31, # 32, # 33], each at 2-3; Hernandez's Response to Kors SJ Motion [Doc. # 41], at 5.

The Court discusses Hernandez's spoliation arguments in Section IV(A), *supra*.

[85]    *See* Hernandez's Response to Kors SJ Motion [Doc. # 41], at 5; Exh. A to Hernandez's Response to Kors SJ Motion, Objections and Motions to Strike Plaintiff's Partial Summary Judgment Evidence [Doc. # 41-2].

[86]    *See* Kors Responses to Motions to Strike [Docs. # 37- # 39].

[87]    *E.g.,* Kors SJ Reply [Doc. # 43], at 9.

28

***Federal Rule of Evidence 602.—***   Under Federal Rule of Evidence 602, a witness may testify to a matter if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  FED. R. EVID. 602. To the extent an ISC investigator's testimony is factual in that it is grounded in the investigator's personal conduct or observations, the testimony is admissible under Federal Rule of Evidence 602 (unless there is another evidentiary issue).  *See United States v. El-Mezain*, 664 F. 3d 467, 495 (5th Cir. 2011) (noting that, under Rule 602, a witness may testify to a matter "[i]f the evidence supports a finding that the witness does possess personal knowledge" of the matter).  The bulk of the ISC investigators' testimony—such as testimony recounting their experience with and training by Michael Kors, the criteria they were taught to assess authenticity of Kors products, and the investigators' personal observations, perceptions and actions in connection with the November 16, 2013, raid on Alex Trading—fits into this category.  *See, e.g.*, *United States v. Cooks*, 589 F.3d 173, 180 (5th Cir. 2009) (finding investigator did not qualify as expert, but that "much of [the testimony] was merely descriptive and summarized the factual information and documents gathered throughout the investigation of Cooks and thus constituted permissible lay testimony"); *United States v. McMillan,*600 F.3d 434, 456 (5th Cir. 2010) (holding that district court correctly admitted accountant's testimony as fact testimony, even though accountant defined certain specialized terms, because he provided factual information about circumstances of case and his interaction with defendant); *United States v. Marsh*, Nos. 13–258, 13–2549, 568 Fed. App'x. 15, at *16 (2d Cir. May 30, 2014) (district court did not err in allowing federal agent to testify, under Rule 602, regarding his training in and use of technology to retrieve cellphone text messages, and the content of the text messages); *United States v. McCorvey*, No. 06–13284, 2007 WL 177692, at *4 (11th Cir. Jan. 25, 2007) (investigator's testimony under Rule 602 that investigation's target had no

legitimate source of income was proper, because investigator "had personal knowledge, based on his investigation"); *Lamer Corp., Inc. v. State Auto. Mutual Ins. Co.*, No. 6:15-CV-0020-WSS-JCM, 2015 WL 11622488 at *5 (W.D. Tex. Dec. 22, 2015) (testimony of insurance investigator who personally inspected buildings allegedly damaged by hailstorm, and created detailed report that included photographs and explanation of findings, was admissible under either Rule 702 or Rule 602). Thus, the ISC witnesses may testify to the training they received and how it affected their conduct, as well as the steps taken to create the photographs and inventories. Furthermore, the photographs taken by the ISC investigators and the inventories they compiled are admissible as ISC's business records under Federal Rule of Evidence 803(6) once properly authenticated at trial. *See* FED. R. EVID. 803, 902.

*Federal Rule of Evidence 701.*— Kors contends that the ISC investigators' opinions on the counterfeit nature of the seized goods are admissible under Federal Rule of Evidence 701.[88] Under Federal Rule of Evidence 701, lay witnesses may provide testimony that exceeds percipient observations and consists of opinion that is:

(a)    rationally based on the witness' perception;

(b)    helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c)    not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.

---

[88]    *See* Kors' Responses to Motions to Strike [Docs. # 37 - # 39].

The final element of Rule 701 was added in 2000 to prevent litigants "from offering expert testimony as lay opinion and circumventing discovery rules." *United States v. York*, 600 F.3d 347, 360 (5th Cir. 2010) (citing FED. R. EVID. 701 Advisory Committee's note to 2000 amendment).  Under Rule 701, "a lay opinion must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the jury."  *Texas A&M Research Foundation v. Magna Transp., Inc.*, 338 F.3d 394, 403 (5th Cir. 2003) (quoting *Miss. Chem. Corp. v. Dresser–Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002)).  However, "the amendment did not place any restrictions on the preamendment practice of allowing business owners or officers to testify based on personal knowledge obtained from their position and experience."  *Metro Hospitality Partners, Ltd. v. Lexington Ins. Co.*, 84 F. Supp. 3d 553, 563 (S.D. Tex. 2015) (quoting *Rimkus Consulting Grp. v. Cammarata,* Civ. A. No. H–07–0405, 2009 WL 1269710, at *5 n. 1 (S.D. Tex. May 7, 2009)); *see also United States v. Valencia*, 600 F.3d 389, 416 (5th Cir. 2010) ("Rule 701 does not exclude testimony by corporate officers or business owners on matters that relate to their business affairs, such as industry practices and pricing.")  Such opinion testimony is admissible because it is not based on the "experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business." FED. R. EVID. 701 Advisory Committee's note to 2000 amendment.

Although the ISC investigators apparently engaged in numerous investigations regarding Kors products over the years, the Court concludes ISC's opinion testimony on the lack of authenticity of the seized items is grounded on "specialized knowledge" under Rule 701, and thus falls within the ambit of Rule

702. *See United States v. Cooks*, 589 F.3d at 180 (citing FED. R. EVID. 701 Advisory Committee's notes to 2000 amendment).[89]   Because Kors failed to designate these affiants as expert witnesses under Rule 702 and failed to provide the necessary information in initial disclosures and during discovery pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), these witnesses cannot give the expert opinions that the goods, tags and labels were counterfeit. The ISC investigators gained their knowledge necessary to detect counterfeit Kors-labeled goods through repeated and updated training from Michael Kors, one of many clients of their employer, ISC, not by virtue of their investigators' employment or experience at Michael Kors.

### ii.    Affidavits of Erica Weiner

Weiner's testimony is admissible as lay opinion testimony under Rule 701. Weiner's responsibilities as Assistant General Counsel, Global IP & Brand Protection extend to Kors' trademark protection and anti-counterfeiting efforts.[90] Her particularized knowledge with respect to authenticating the goods in question arises from her wide-ranging duties at Kors.   She will be permitted to opine regarding  whether  items  she  inspected—in  photographs  or  otherwise—are

---

[89]   The Court recognizes ISC is retained by a multitude of companies, including Kors, to investigate violations of corporate intellectual property and conduct anti-counterfeiting enforcement operations. *See* Declaration of Joel Voyles (third set) [Doc # 43-3], at 1 ¶ 2.   ISC has conducted over 6,500 such investigations, including over 275 investigations into counterfeit Kors Marks. *Id.*   The ISC affiants explained that they received "extensive training" from Kors over the past five years to identify counterfeit products, and, when authenticating Kors items "in the field," the investigators consult printed materials Kors provides them. *See* Declaration of Joel Voyles (third set) [Doc # 43-3], at 2 ¶ 4; Exh. C to Kors SJ Reply, Declaration of Stephanie Voyles [Doc # 43-4], at 2 ¶ 4.

[90]   Declaration of Erica Weiner (third set) [Doc # 43-2], at 1 ¶ 2.

counterfeit products.[91]   Such opinions are based upon personal knowledge and experience she gained while with Kors.  The ruling in *United States v. Valencia*, 600 F.3d at 416, is instructive.  "Because [a former employee's] knowledge and analysis were derived from duties he held at Dynegy, his opinions were admissible as testimony based upon personal knowledge and experience gained while employed by [that company]."  *Id.* (citing FED. R. EVID. 701).

Therefore, Hernandez's Motions to Strike Ralph Richard, Jr., Stephanie Voyles and Joel Voyles [Docs. # 31, # 32, # 33] are **denied in part and granted in part**.  Hernandez's Objections and Motions to Strike Kors' Partial Summary Judgment Evidence [Doc. # 41-2] is **denied** with respect to the affidavit of Erica Weiner and **denied in part and granted in part** with regard to testimony of Joel Voyles and Stephanie Voyles.

### b. Kors' Motion to Exclude Expert Testimony of Michael Santoni

Hernandez has designated private investigator Michael Santoni as an expert witness in this case [Doc. # 30].  Hernandez provided a report by Santoni dated

---

[91]   Hernandez argues that Weiner's opinions are conclusory and, insofar as they are based on the opinions of ISC investigators, or materials created by ISC investigators, unreliable.  Hernandez also urges that Weiner's statements are vague.  Hernandez points out that she fails to specify which specific photographs in the record she reviewed to conclude the pictured items were counterfeit, and asserts that, like those of the ISC investigators, her statements "lack methodology and specificity."   *See* Exh. A to Hernandez's Response to Kors SJ Motion, Defendants' Objections and Motions to Strike Plaintiff's Partial Summary Judgment Evidence [Doc. # 41-2].  Hernandez's objections are **overruled**.  The use of means other than the original items, and the details of which photographs on which Weiner relied, go to the weight of the testimony and are matters for cross-examination.

May 26, 2016 (the "May Report")[92] as well as Santoni's two-page curriculum vitae.[93]    Santoni's May Report states merely that, without inspection of the allegedly counterfeit items, he cannot determine whether they are authentic or not. He also mentions there "seem[] to be discrepancies between the numbers supplied on the inventory sheets, the police reports and the investigative reports."[94] Hernandez subsequently proffered a supplemental declaration by Santoni executed August 15, 2016 [Doc. # 42-1][95] that describes potential obstacles to authenticating

---

[92]    Exh. A to Kors Motion to Exclude, Santoni May Report (the "Santoni May Report") [Doc. # 36-1].

[93]    *Id.*

[94]    *Id.* at 4.  Other than his qualifications, the Santoni May Report states:

> Relative to this case, I was supplied with numerous items, including investigative reports, police reports, inventory sheets, pictures of products, etc.  When I asked to view the actual evidence seized in this case, I was informed that the evidence had been destroyed already.

> Although many pictures were supplied, I cannot say with any type of certainty that the photographed items were indeed counterfeit.  Without being able to physically inspect the evidence, I am not able to offer an opinion as to whether the evidence in question was counterfeit.

> Although inventory sheets were supplied, there seems to be discrepancies between the numbers supplied on the inventory sheets, the police reports and the investigative reports.  Once again, without being able to physically inspect the evidence, I am not able to confirm the actual and correct number of items seized.

May Report [Doc. # 36-1], at ECF 7.

[95]    Kors contends that "it is improper to expand [Santoni's] opinion at this stage beyond what is contained in his report."  Reply to Kors Motion to Exclude [Doc. # 44], at 5.  However, the Court will consider this supplement in the interests of justice, as Kors has been permitted to supplement its witnesses' affidavits.

items merely by reference to photographs of the items (the "Santoni Declaration" and, together with the May Report, "Santoni's submissions").[96]

Kors seeks to exclude Santoni's testimony on various grounds, including that Santoni gives neither an expert opinion nor a reasoned basis thereof and, therefore, his testimony does not satisfy the requirements of Federal Rule of Evidence 702.  Federal Rule of Evidence 702 provides that

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts or data;
>
> (c)  the testimony is the product of reliable principles and methods; and
>
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

Informed by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, Rule 702 "imposes a

---

[96]  Declaration of Michael Santoni, dated August 15, 2016 [Doc. # 42-1], at ECF 2-3. Santoni notes, for example, that when looking only at a photograph, one

> cannot see all the markings on the item, such as logo, font of all writings, content of all writings, any misspellings in the writings.  Many times, there are indicators in all these things that would lead to a conclusion that the items are counterfeit… In the case of handbags, you are not able to examine the quality of the fabric or look at the quality of the stitching and you may or may not be able to see all the contents of the writings on the neck tag.

*Id.* at ECF 2.

'special obligation' on a trial court to ensure that expert evidence is both reliable and relevant." *Carlson v. Bioremedi Therapeutic Systems, Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).  The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *See* FED. R. EVID. 104(a).  Courts may consider a nonexhaustive list of factors in determining reliability,[97] but "whether a proposed expert should be permitted to testify is case, and fact, specific." *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 195 (5th Cir. 2006).  This so-called "gate-keeping" obligation applies to all types of expert testimony, not just "scientific" testimony.  *See United States v. Kuhrt*, 788 F.3d 403, 419 (5th Cir. 1999) (quoting *Kumho Tire Co.*, 526 U.S. at 147).  "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Shell Trademark Management B.V. v. Warren Unilube, Inc*, 765 F. Supp. 2d 884, 889 (S.D. Tex. 2011) (quoting *Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir. 1999)).

The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 151.  The Court "must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case." *Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).  Additionally, "[t]he expert testimony must be

---

[97]     These factors may include "whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community." *Sims v. Kia Motors of Am. Inc.* —F.3d—, 2016 WL 5831464, at *3 n.17 (5th Cir. Oct. 5, 2016).

relevant, not simply in the sense that all testimony must be relevant, Fed. R. Evid. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015) (quoting *Bocanegra v. Vicmar Servs., Inc.,* 320 F.3d 581, 584 (5th Cir. 2003)).

   ***Inability to Determine Authenticity of Goods.***— The  Court concludes that, when his report and second submission are read literally, Santoni does not seek to give any opinion that involves specialized or scientific knowledge that will assist the jury.  Santoni's submissions purport to address, albeit indirectly or vaguely, two issues: (1) the authenticity, or lack thereof, of the seized items, and (2) potential unidentified discrepancies among ISC's inventories and various reports.[98] With respect to the ability to assess authenticity, Santoni explains that without being able to physically inspect the seized items, he "cannot say with any type of certainty that the photographed items were indeed counterfeit."[99]

   To the extent Santoni's opinion essentially is that it is preferable to inspect the original of an item to draw conclusions, rather than be required to rely on photographs, this opinion simply states an obvious proposition.  Indeed, this concept is within a jury's common sense and lay experience.  Under Federal Rule of Evidence 702, expert testimony may be introduced only when it is helpful to the jury, FED. R. EVID. 702, which Santoni's testimony, in this regard, is not.  *See In re Schooler*, 725 F.3d 498, 514 (5th Cir. 2013) ("'There is no more certain test for determining when experts may be used than the common sense inquiry whether the

---

[98]    *See* Santoni May Report [Doc. # 36-1], at ECF 7; Santoni Declaration, dated August 15, 2016 [Doc. # 42-1], at ECF 2-3.

[99]    Santoni May Report [Doc. # 36-1], at ECF 7.

untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue'") (quoting FED. R. EVID. 702 Advisory Committee's note to 1972 amendment).  Accordingly, to the extent Santoni merely opines that he cannot reach any conclusion on authenticity, or lack thereof, his opinion is irrelevant.  *Compare Carlson*, 822 F.3d at 200 (noting proffered expert testimony that expert could not reach a conclusion because of conflicting facts constitutes admissible opinion) *with Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 245 (5th Cir. 2002) (deciding proffered expert testimony is inadmissible because "a perfectly equivocal opinion does not make any fact more or less probable and is irrelevant under the Federal Rules of Evidence.").

*Expert Opinion on Authenticity.*— To the extent Hernandez seeks to rely on Santoni to suggest or support—directly or indirectly—the merits argument that the seized items were not counterfeit, that opinion is an expert opinion that fails to meet the requirements of Federal Rule of Evidence 702.[100]

First, any such opinion by Santoni, if being offered, is based on specialized knowledge that Santoni has not been shown to possess.  The Court has reviewed Santoni's curriculum vitae, the only evidence of his experience in discerning counterfeit items, and concludes that Hernandez does not establish Santoni is qualified to opine on the authenticity of Kors' goods.  Though Santoni reports he is "affiliated" with two professional trademark associations,[101] he does not have any

---

[100]    Hernandez, however, may use Santoni as a lay witness if he has personal knowledge that is relevant.

[101]    Santoni is affiliated with the International Trademark Association and International Anti-Counterfeiting Coalition.  Santoni May Report [Doc. # 36-1], at ECF 9.

trademark-specific licenses,[102] and he does not explain what role he plays in the cited associations.  He mentions no peer-reviewed or other publications, or training he has undertaken on trademark issues or counterfeiting topics.  Santoni claims experience with intellectual property investigations and anti-counterfeiting, but provides no detail other than the conclusory assertion that, since 2001, he has conducted "hundreds of investigations into counterfeit products and grey market products of all types."[103]  There is no explanation of what kind of investigations took place or what his role was in them.  Even assuming that Santoni's experience in counterfeit investigations is extensive, he provides no support for the contention that he has any specific knowledge of or is qualified to identify counterfeits of Michael Kors products in particular, whether through photographs or by physical inspection.[104]

Further, Defendants fail, both through their Rule 26 designation of Santoni and through Santoni's two submissions themselves, to satisfy Federal Rule of Civil Procedure 26(a)(2)(B).[105]  Defendants did not include identification, for example,

---

[102]   *Id.*

[103]   *Id.* at ECF 7.

[104]   Santoni's August Declaration, describing the "problem with trying to identify a counterfeit from only a photograph," *see* Doc. # 42-1, at ECF 2-3, is generic. Santoni also fails to consider any of the other evidence available in the case.

[105]   Federal Rule of Civil Procedure 26(a)(2)(B) requires expert witnesses provide a report containing the following information:

> (1)    a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (2)    the facts or data considered by the witness in forming them;
>
> (3)    any exhibits that will be used to summarize or support them;

(continued…)

of any publications Santoni has authored within the past ten years (Rule 26(a)(2)(B)(iv)); a list of cases in which he has testified as an expert during the past four years (Rule 26(a)(2)(B)(v)); or, the compensation he will earn in return for his testimony (Rule 26(a)(2)(B)(vi)).

*Alleged Inconsistencies Among Inventories and Records.*— Santoni also states there may be inconsistencies among "inventory sheets, [ ] police reports, and [ ] investigative reports."[106]  This suggestion is not an admissible expert opinion. Santoni fails to offer any substance or detail about any alleged discrepancies; he does not identify specific sheets and reports to which he refers; and, he does not reveal the use of any methodology to reach his vague suggestion.  Hernandez thus fails to establish how Santoni's conclusion is grounded in reliable analysis.  Such testimony, untethered from reasoning and reliability metrics, is inadmissible speculation.  *See* FED. R. EVID. 702, Advisory Committee's notes to 2000 amendment ("[t]he trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted.").  "Courts must be arbiters of truth, not junk science and guesswork." *Huss v. Gayden*, 571 F.3d at 460 (5th Cir. 2009) (citing *Daubert*, 509 U.S. at 596–97).  Thus, the Court is not required to "admit opinion evidence that is connected

---

(continued…)

(4)    the witness' qualifications, including a list of all publications authored in the previous 10 years;

(5)    a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(6)    a statement of the compensation to be paid for the study and testimony in the case.

[106]    Santoni May Report [Doc. # 36-1], at ECF 7.

to existing data only by the ipse dixit of the expert." *Kumho Tire Co.*, 526 U.S. at 157 (1999) (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Ellis v. United States*, 673 F.3d 367, 373 (5th Cir. 2012). Where the challenged opinion "is fundamentally unsupported, then it offers no expert assistance to the jury." *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

To the extent Santoni's analysis is merely a comparison of relevant items or matters among the lists which a lay person reviewing the lists could identify, the analysis is not a subject for expert opinion. There has been no explanation why his suggestion would be helpful to jurors.

For the foregoing reasons, the Court **grants** Kors' Motion in Limine to Exclude the Expert Testimony of Michael Santoni, and his designation as an expert is stricken.

## 2.    Summary Judgment Motion Analysis

Kors moves for partial summary judgment against Alex Trading, on the issue of liability, with respect to its claims for trademark infringement (Count I) and false designation of origin (Count III) in violation of the Lanham Act, injury to business reputation or trademark under Texas law (Count V), and trademark infringement and unfair competition under common law (Count VI).[107] The parties do not appear to dispute that the facts that support an action for trademark infringement under the Lanham Act (Count I) also establish liability on Count III

---

[107]    At this juncture Kors seeks only a permanent injunction, but reserves the right to pursue damages in connection with the claims alleged. Kors SJ Motion [Doc. # 35], at 2.

and Count VI.[108]  *Choice Hotels Intern., Inc. v. Patel*, 940 F. Supp. 2d 532, 538 (S.D. Tex. 2013) (facts giving rise to an action for trademark infringement under the Lanham Act also support actions for false designation of origin under the Lanham Act, trademark infringement under Texas common law, and unfair competition under Texas common law); *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 483-84 (5th Cir. 2004) (proof of trademark infringement and unfair competition under federal law supports trademark infringement and unfair competition claims under Texas law), *abrogated in part on other grounds by Baker v. DeShong*, 821 F.3d 620 (5th Cir. 2016).

Hernandez disputes liability on only two grounds.  First, Hernandez contests any finding of trademark infringement by contending that there is a genuine question of fact regarding whether the seized Kors-labeled goods were counterfeit or authentic products.[109]  Second, Hernandez argues that, even if the seized items

---

[108]     Kors also seeks summary judgment on Count V, Injury to Business Reputation or Trademark.  It is noted, however, that Kors' characterization of Count V as a "Texas statutory trademark infringement claim," and identification of it as a violation of Texas Business and Commerce Code § 16.29, is off base.  *See* Kors SJ Motion [Doc. # 35], at 1, 19.  First, in 2012, § 16.29 was superseded by § 16.103.  Moreover, § 16.103 (and, previously, § 16.29) is the Texas Anti-Dilution Act, Tex. Bus. & Com. Code § 16.103, and a claim thereunder is distinct from a trademark infringement claim.  To prevail on a cause of action under § 16.103, Plaintiffs must show (1) ownership of a mark that is famous and distinctive and (2) a likelihood of dilution.  Tex. Bus. & Com. Code § 16.103.  A likelihood of dilution may occur because of "(1) 'blurring,' a diminution in the uniqueness and individuality of the mark, or (2) 'tarnishment,' an injury resulting from another's use of the mark in a manner that tarnishes or appropriates the goodwill and reputation associated with plaintiff's mark."  *Abraham v. Alpha Chi Omega*, 781 F. Supp. 2d 396, 428 (N.D. Tex. 2011).  Without deciding whether Kors has shown either element of the state dilution action, the Court concludes that the liability issues that arise in connection with Kors' trademark infringement claim also preclude summary judgment on Count V.

[109]     *See* Hernandez's Response to the Kors SJ Motion [Doc. # 41], at 3.

42

were counterfeits, Alex Trading is not liable for the actions of the direct infringers.[110]   Kors opposes both arguments on several grounds.   The Court concludes that summary judgment should be granted on the issue of whether the goods were counterfeit, but denied on the issue of which entities are liable for trademark law violations.

### a.   Trademark Infringement under the Lanham Act

The Lanham Act, 15 U.S.C. § 1051 *et seq.*, governs federal trademark infringement claims.  Section 43 of the Act provides:

> Any person who shall, without the consent of the registrant[,] ... use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1).

"To recover on a claim of trademark infringement, a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion."  *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).  Liability under the Lanham Act also requires use of the marks in commerce without the owner's consent.[111]  15 U.S.C. § 1114(1).

---

[110]   *Id.*

[111]   "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade ..." 15 U.S.C. § 1127.  A mark is deemed to be used in commerce "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." *Id.*

### i.      Ownership and Use in Commerce

For a trademark to be legally protectable, the mark must be valid, and, therefore, distinctive.  *See, e.g.*, *American Rice*, 518 F.3d at 329.  Registration of a mark on the principal register is prima facie evidence of the mark's validity.  *See Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 537 (5th Cir. 2015).  Except in certain limited circumstances, ownership of a protectable mark is proven where a mark is federally registered and has become "incontestable" under §§ 1058 and 1065.  *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 669 & n.8 (5th Cir. 2000), *superseded in part on other grounds by statute*, Trademark Dilution Revision Act of 2006, Pub. L. No. 109-312, § 2, 120 Stat. 1730, 1730-33 (2006).  Hernandez does not dispute that Kors owns the Kors Marks, and does not raise affirmative defenses regarding the validity or enforceability of the Kors Marks.  Nor does Hernandez dispute that the Kors Marks were used in commerce.

### ii.     Authenticity of Goods and Likelihood of Confusion

Hernandez deflects on the issue of likelihood of confusion, arguing instead that there is a genuine issue of fact with respect to the authenticity, or lack thereof, of the goods seized.  The issue of authenticity or counterfeit is a threshold question that guides the Court's likelihood of confusion analysis.

Trademark infringement under the Lanham Act typically requires proof of a likelihood of confusion between the original and the allegedly infringing marks.[112]

---

[112]   In the Fifth Circuit, courts consider the following nonexhaustive list of factors to determine whether a likelihood of confusion exists: (1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care
(continued…)

*American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d at 329.  With respect to counterfeit marks, however, "courts in this district [and other jurisdictions] have determined that a thorough analysis of the [factors] of confusion is unnecessary, and a presumption of confusion exists."  *Choice Hotels Intern.*, 940 F. Supp. 2d at 540.  *See also Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 310–311 (5th Cir. 2008) (noting that district court did not err in declining to consider each of the digits of confusion because "the [Defendant] used the exact same mark"); *Petro Franchise Sys., LLC v. All Am. Props., Inc.*, 607 F. Supp. 2d 781, 788 (W.D. Tex. 2009) (stating that "a district court may confine its digits-of-confusion analysis to the determination that the marks used by the allegedly infringing party are the exact marks owned by the plaintiff and, if they are, find that confusion is likely"); *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1007 n.11 (S.D. Tex. 2000) (noting likelihood of confusion is clear in the case of counterfeit marks); *Microsoft Corp. v. Sellers*, 411 F. Supp. 2d 913, 919 (E.D. Tenn. 2006) ("the likelihood of consumer confusion is indisputable in cases involving the distribution of unauthorized and infringing items such as Microsoft's marks, which are recognized worldwide"); *Procter & Gamble*, 123 F. Supp. 2d 108, 115 (E.D.N.Y. 2000) ("[w]here ... one produces counterfeit goods in an apparent

---

(continued…)

exercised by potential purchasers.  *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d at 329.   "No single factor is dispositive, and a finding of a likelihood of confusion does not require a positive finding on a majority of these 'digits of confusion.'"  *T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 914 (S.D. Tex. 2016) (quoting *Elvis Presley Enters.*, 141 F.3d at 194). Courts are free to consider other relevant factors in assessing likelihood of confusion.  *Id.*

The Court notes that there is ample evidence on the record that factors (1)-(4) weigh in favor of Hernandez.

attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion.") (quoting *Polo Fashions, Inc. v. Craftex, Inc.,* 816 F.2d 145, 148 (4th Cir. 1987)); *Microsoft Corp. v. CMOS Technologies, Inc.*, 872 F. Supp. 1329, 1335 (D.N.J. 1994) (finding a likelihood of confusion because "[i]t would be difficult to imagine a clearer case of consumer confusion than the instant case in which the defendants, acting in direct competition with the plaintiff, sold counterfeit products on which plaintiff's registered marks appear in their entirety.").

***Are the Goods, Tags and Labels Counterfeit?—*** Kors has submitted extensive evidence that the items seized from the two Alex Trading locations were counterfeit.  The Court concludes that Hernandez has not raised a genuine issue of fact on this issue.  Though Hernandez protests that Kors' alleged spoliation makes it impossible to confirm that the goods were not authentic, Kors relies on other evidence.  Defendants' deposition testimony and interrogatory responses permit no other conclusion.  In Cordero's deposition testimony, which she gave individually and on behalf of Alex Trading, she states that, prior to 2013, she had never purchased authentic Michael Kors products other than fragrances.[113]  She admitted she purchased handbags, including those shown in certain photographs of seized products, but they did not have the Kors trademark on them.[114]  Moreover, in its first set of interrogatory responses, Hernandez International, Inc., by Cordero, stated that:

> [i]n 2013 store management was a responsibility of Sandra Duran, an employee.  Based upon information and belief, Ms. Duran purchased counterfeit products without Defendants Alex Trading or Leticia

---

[113]     Cordero Deposition [Doc. # 35-3], at 57:12-16.

[114]     *Id.* at 58:7-59:14.

Cordero's knowledge or consent and offered it for sale.[115]

Additionally, the evidence reveals that HPD recovered more than 17,000 loose "Michael Kors" labels from Alex Trading facilities, as well as an embossing machine and a "MICHAEL KORS" stamp.[116]   According to Weiner, Kors' Assistant General Counsel, Kors has never distributed any stamps or stand-alone labels bearing the Kors Marks to any third parties and, other than Kors' own manufacturers, Kors has never permitted any third party to make stamps or stand-alone labels bearing the Kors marks.[117]

Hernandez provides no countervailing admissible evidence.[118]   Kors therefore is entitled to summary judgment on the issue that the seized items were

---

[115]   Exh. B-2 to Kors SJ Motion, Hernandez International Inc.'s Responses to Kors' First Set of Special Interrogatories [Doc. # 35-3], at ECF 81.

[116]   Declaration of Joel Voyles (third set) [Doc. # 43-3], at 237-39.

[117]   Declaration of Erica Weiner (third set) [Doc. # 43-2], at 3-4 ¶ 8(d).   Weiner reviewed the reports and photographs ISC compiled in connection with the November 16, 2013 criminal seizure, and concluded that the Kors items seized were counterfeit.   In addition to the above-noted evidence, she based her conclusion on the fact that: (i) Kors has not sold many of the styles shown in photographs of the seized products, and (ii) Kors does not use certain trademarks and labels placed on seized products, such as the label "JIXIANG" attached to a pair of boots.

[118]   The parties dispute whether Alex Trading sold in the past, or continues to sell online, authentic or counterfeit Michael Kors fragrances.   Hernandez asserts that Kors fragrances are authentic, and submitted invoices for purchase by Cordero on behalf of Alex Trading.   Kors argues that the sellers listed on the invoices are not authorized distributors of Kors fragrances and that the fragrances must be counterfeit.   The ISC inventories do not include Kors fragrances, and it is unclear whether any such products were seized by the HPD.   In any event, the authenticity of the fragrances does not impact the Court's analysis of likelihood of confusion regarding the Kors-marked clothing, accessories, or labels at this stage.   The authenticity of the Kors-labeled fragrances will be addressed at trial.

47

counterfeit. The Court also concludes that the seized counterfeit Kors marks, labels and tags, on products or loose, are likely to cause consumer confusion that the items to which they are or could be affixed are authentic when they are not. *See Microsoft Corp.*, 129 F. Supp. 2d at 1007 & n.11.

### b. Liability

Kors contends that Defendants are collaterally estopped from contesting the issue of trademark infringement.[119] Hernandez counters that Kors cannot rely on collateral estoppel and thus Kors fails to prove Alex Trading is liable for the infringing acts of its arrested employees.[120] Kors also contends that Alex Trading is both vicariously liable under the doctrine of *respondeat superior*, and also directly liable for those acts.[121] Hernandez replies that Kors fails to prove Alex Trading is liable under these theories for the infringing acts of its arrested employees.[122] The Court addresses collateral estoppel, secondary liability and direct liability in that order.

### i. Collateral Estoppel

Kors argues that Hernandez is collaterally estopped from disputing the fact that the seized merchandise was counterfeit.[123] Collateral estoppel applies,

---

[119]   *See* Response to Kors SJ Motion [Doc. # 41], at 7-9; Kors SJ Reply [Doc. # 43], at 13.

[120]   Response to Kors SJ Motion [Doc. # 41], at 7-9, 12-14.

[121]   Kors SJ Reply [Doc. # 43], at 17.

[122]   Response to Kors SJ Motion [Doc. # 41], at 3.

[123]   Kors asserts its collateral estoppel argument only against the corporate defendants, and not against Cordero individually. *See* Kors SJ Reply [Doc. # 43], at 13 ("Defendants would arguably be in "privy" with their employees here where Defendants (which are corporations) can only act through their employees").

according to Kors, because Alex Trading's employees, Sandra Duran, Marina Jimenez-Flores, and Carlos Duran-Hernandez, were arrested the day HPD raided Alex Trading and later pleaded guilty to trademark counterfeiting under Texas law.[124]

"Collateral estoppel 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit'." *United States v. Angleton*, 221 F. Supp. 2d 696, 726 (S.D. Tex. 2002). Because the Alex Trading employees were convicted in Texas state court of violation of Texas law, Texas law governs the preclusive effect of the Texas criminal court's rulings in the present case. *See McCoy v. Hernandez*, 203 F.3d 371, 374 (5th Cir. 2000) (applying Texas law and affirming district court's refusal to apply collateral estoppel, arising from state court judgment, in § 1983 action); *Richardson v. Wells Fargo Bank, N.A.*, —F.3d—, 2016 WL 6068120, at *5 (5th Cir. Oct. 14, 2016) (applying California law to determine whether state class action settlement precluded subsequent federal action based on FLSA claims); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 436-37 (5th Cir. 2000) (determining applicability of res judicata arising from state court judgment according to Louisiana law); *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (noting the full faith and credit statute, 28 U.S.C. § 1738, "directs a federal court to

---

[124]   *See* ISC November 22, 2013 Report [Doc. # 35-4], at 1-3; Exh. B-5 to Kors SJ Motion, Judgment of Conviction of Sandra Yaneth Duran [Doc. # 35-3], at ECF 95; Exh. B-6 to Kors SJ Motion, Plea of Rene Geovanni Ayala-Guido [Doc. # 35-3], at ECF 99; Exh. B-7 to Kors SJ Motion, Plea of Isabel Marina Jimenez-Flores [Doc. # 35-3], at ECF 109. Carlos Duran-Hernandez's plea was not provided, but each of the guilty pleas in the record identify him as a co-defendant.

refer to the preclusion law of the State in which judgment was rendered …
'[§ 1738] goes beyond the common law and commands a federal court to accept
the rules chosen by the State from which the judgment is taken.'")
(quoting *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 481–482 (1982)).

Texas law provides that "the party seeking to assert the bar of collateral
estoppel must establish that (1) the facts sought to be litigated in the second action
were fully and fairly litigated in the first action; (2) those facts were essential to the
judgment in the first action; and (3) the parties were cast as adversaries in the first
action." *McCoy*, 203 F.3d at 374.  Due process requires an identity of the parties
in the two actions at issue, or, alternatively, that "the party against whom the
doctrine is asserted [i]s a party or in privity with a party in the first action." *Id.*
With respect to collateral estoppel, parties are in privity "when: (1) they control an
action even if they are not parties to it; (2) their interests are represented by a party
to the action; or (3) they are successors in interest, deriving their claims through a
party to the prior action." *Id.*

Alex Trading neither controlled the state court criminal proceedings nor is a
successor in interest to any of its former employees.  The relevant inquiry
accordingly is whether Alex Trading's interests were represented by its former
employees.  Kors argues Alex Trading and its former employees are in privity for
the purpose of collateral estoppel because Defendants' employees were arrested for
trademark counterfeiting in the course of their employment (while working at
Defendants' stores) and corporate defendants can act only through their
employees.[125]  Hernandez responds that the arrested employees were running an
illicit, unauthorized counterfeiting operation unknown to Cordero, and the

---

[125]    Kors SJ Reply [Doc. # 43], at 13.

proceeds did not flow to Alex Trading.[126]   Hernandez points to Cordero's deposition testimony[127] and related sales slips.[128]   In her deposition, Cordero testified on behalf of all the Hernandez Defendants.  She testified that she believed Sandra Duran purchased counterfeit items without Defendant Alex Trading's or her knowledge, and secretly sold those items at Alex Trading for Duran's and others' benefit.[129]   Cordero further stated that in 2015 she found, hidden in the Alex Trading Airline warehouse, records tracking the employees' profits from sales of counterfeit items.[130]   According to Cordero, at least one of the records is in Sandra Duran's handwriting.[131]   This evidence raises a genuine issue of fact with respect to privity, thus precluding application of collateral estoppel on summary judgment.  This issue must be litigated at trial.

### ii.    Vicarious Liability

The Lanham Act provides a cause of action against "any person" who infringes a trademark holder's rights.  The Act is silent with respect to liability of persons other than the infringers.[132]   Outside the trademark context, the Supreme Court has noted that it "assume[s], when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and

---

[126]    *See* Response to Kors SJ Motion [Doc. # 41], at 13-14.

[127]    Cordero Deposition [Doc. # 35-3], at 46-49.

[128]    Exh. B-8 to Kors SJ Motion, Alex Trading Sales Receipts [Doc. # 35-3], at ECF 119-34.

[129]    Cordero Deposition [Doc. # 35-3], at 39:19-25, 40:1-7, 46:1-8.

[130]    *Id.* at 47-49.

[131]    *Id.* at 57:12-16.

[132]    *See* 15 U.S.C. § 1114(1).

consequently intends its legislation to incorporate those rules," *Meyer v. Holley*, 537 U.S. 280, 285 (2003), and, looking to the common law origins of the Lanham Act, federal courts have read into that silence common law concepts of agency, including vicarious liability.[133]   *See, e.g.*, *Am. Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1434 (3d Cir. 1994); *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992); *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1240 (10th Cir. 2013).

The Supreme Court has not articulated a test with respect to vicarious liability in the trademark context,[134] and the Fifth Circuit has neither recognized nor rejected the doctrine.  The Fifth Circuit noted, in discussing vicarious liability within the context of another statutory scheme, the Anti-Kickback Act of 1986, § 2(a), 41 U.S.C § 55(a), that "[w]hen grappling with the standard for imposing vicarious liability in civil liability provisions, we look to the common law principles distilled in the Restatement (Second) of Agency for guidance."  *See United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 355 (5th

---

[133]   Circuits have enunciated tests with reference to jointfeasor tort liability and principles of agency law.  *See, e.g.*, *Hard Rock Café v. Concession Servs.*, 955 F.2d at 1150 (joint tortfeasor liability test); *Am. Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d at 1435-6, 1436 n.17, 1438 (test based on Restatement (Second) of Agency); *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d at 1240 (test based on Restatement (Third) of Agency).

[134]   The Supreme Court established a test for contributory infringement, a species of secondary liability, under trademark law in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982).  Hernandez argues in its Response to Kors SJ Motion that Kors fails to show liability for either contributory infringement or vicarious infringement, but as Kors focuses only on vicarious and direct liability the Court does not address contributory infringement here.

Cir. 2013).[135]

The Supreme Court's discussion in *Meyer* is also helpful regarding inquiries into the appropriate boundaries of liability.  In *Meyer* the Supreme Court addressed whether the Fair Housing Act, 45 U.S.C. § 3601 *et seq.*, imposed personal liability without fault upon an officer or owner of a corporation for the unlawful activity of the corporation's employee or agent.  *See* 537 U.S. at 281.  The Supreme Court decided the case with reference to traditional vicarious liability rules, and looked to the Restatement (Second) of Agency (the "Restatement") in determining those rules.  *Id.* at 285-86.

Accordingly, the Court takes guidance from the Restatement.  It provides in part that "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment."  The master also is subject to liability if the servant's act was committed outside the scope of employment and "the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, *or* he was aided in accomplishing the tort by the existence of the agency relation."  Restatement § 219 (1958) (emphasis added). *See also* Restatement § 140 (Liability Based Upon Agent Principles); § 194 (Acts of General Agents); § 282 (Agent Acting Adversely to Principal).

At its core, Kors' argument is that Alex Trading is vicariously liable under the doctrine of *respondeat superior* because the employees' "scope of authority" was "selling goods" for Alex Trading and the sale of counterfeit goods is within

---

[135]   The Court notes that *Clearline Technologies Ltd. v. Cooper B-Line, Inc.*, 871 F. Supp. 2d 607, 613-14 (S.D. Tex. 2012), applied the jointfeasor tort liability test adopted by the Second, Seventh and Ninth Circuits, but did so because the parties in that case had agreed to use that test.  *See Clearline Technologies*, 871 F. Supp. 2d at 613.  This case is not precedent on the issue presented here.

these employees' scope of duties.[136]   Kors oversimplifies the issues.  Pointing to the sales records Cordero claims she discovered in 2015, Hernandez argues that the sales (and other of the employees' activities) were part of an unauthorized counterfeiting operation that functioned entirely for the employees' own benefit.[137] There is a genuine question of material fact whether the authorized duties of Alex Trading employees extended to selling counterfeit goods.[138]   Summary judgment thus is not warranted on a theory of vicarious liability.

### iii.   Direct Liability

Kors also claims that Alex Trading is directly liable for infringing acts of its arrested employees.   "While vicarious liability attempts to establish whether a corporation can be held liable for its employee's actions, knowledge imputation asks whether the employee's mental state can be attributed to the corporation." *United States v. Kellogg Brown & Root, Inc.*, 161 F. Supp. 3d 423, 434 (E.D. Tex. 2015).  As a general principle of corporate law, "'[t]he acts of a corporation's vice-principals are considered to be the acts of the corporation itself and are imputed to the corporation.   Thus, the liability of a corporation for the acts of its vice-principals is direct rather than vicarious."   *See* FLETCHER § 4877.[139]   Kors

---

[136]   Kors SJ Reply [Doc. # 43], at 21.

[137]   *See* Response to Kors SJ Motion [Doc # 41], at 13.

[138]   To the extent Kors' vicarious liability argument turns on the employees' apparent authority, there is a question of fact whether the arrested employees exercised sufficient apparent authority while selling counterfeit goods at Alex Trading to hold Alex Trading liable for one or more of the employees' actions.

[139]   Kors cites *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 355 (5th Cir. 2013), for this proposition, but fails to disclose that the proposition is articulated solely in a one-judge concurrence.  Such an omission in a citation is not appropriate.

contends that the arrested employees—particularly Sandra Duran, the acting manager of Alex Trading in 2013—should be considered vice-principals of Alex Trading and thus their acts are properly imputed to that entity.[140]

"While courts generally agree that the knowledge of directors or key officers, such as the president and vice president, is imputed to the corporation, [courts] differ as to the effect of knowledge acquired by other employees." *In re Hellenic, Inc.*, 252 F.3d 391, 396 (5th Cir. 2001) (so noting in the context of the Limited Liability Act). "Whether an individual's knowledge will be imputed to the corporation depends on a factual determination … of the individual's position in the corporate hierarchy; the person need not necessarily be either a shareholder or an officer." FLETCHER § 807. The Court concludes that there is a genuine issue of material fact whether the convicted Alex Trading employees were "vice-principals" whose conduct and knowledge may be imputed to Alex Trading.[141]

---

[140]   *See* Kors SJ Reply [Doc. # 43], at 17-19.

[141]   The Court applies Texas state law to determine whether to impute employees' knowledge to the employer corporation on state law claims. *See O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 83-84 (1994); *Askanase v. Fatjo*, 130 F.3d 657, 666 (5th Cir. 1997) (various claims including negligence, fraud, and breach of fiduciary duties). The Supreme Court held in *O'Melveny & Myers* that, in the context of state law claims, an officer's knowledge will be imputed to his corporation as a matter of state law, rather than federal law. *O'Melveny & Myers*, 512 U.S. at 83-84. Courts in the Fifth Circuit therefore have applied Texas law in deciding whether to impute knowledge in cases involving, for example, negligence and fraud claims.

Courts disagree whether *O'Melveny* applies to federal statutory claims. *Compare Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 494 (3d Cir. 2013) (concluding imputation under the Securities Exchange Act is a question of state law) *with In re ChinaCast Educ. Corp. Sec. Lit.*, 809 F.3d 471, 475 n.4 (9th Cir. 2015) (analyzing imputation in connection with a claim brought under Rule 10b-5 of the Securities Exchange Act of 1934 as "a question of federal securities law, albeit one guided by (common law) agency principles."). At least one court in this circuit has

(continued…)

This inquiry requires further evidence regarding each individual's duties, corporate authority, and other relationships to Alex Trading, matters that require a trial.[142]

---

(continued…)
looked to common law corporate and agency principles for guidance in analyzing imputation with respect to claims brought under a federal statute.  *See Kellog, Brown & Root, Inc.*, 161 F. Supp. 3d at 437-38 (noting that, in the context of the Anti-Kickback Act, 41 U.S.C. §§ 51-58, finding a "managerial role" is a required basis for imputing employee's knowledge to corporation).

Texas law defines a "vice-principal" as:

> a person who "represents the corporation in its corporate capacity, and includes persons who have authority to employ, direct, and discharge servants of the master, and those to whom a master has confided the management of the whole or a division of his business.

*Bennett v. Grant*, 460 S.W.3d 220, 239-40 (Tex. App.—Austin 2015).  Fact issues remain as to whether Sandra Duran or any of the other convicted employees meet this definition.

Any party that contends the applicable rule differs from that set forth in this Memorandum and Order must brief for trial the issue of the law to be applied to any imputation of knowledge.

[142]  It is possible that, as with fraud claims, "imputation turns on whether the agent was acting for or against the principal's interest; knowledge acquired by an agent acting adversely to his principal is not attributable to the principal." *Renecker v. Offill, Jr.*, 2012 WL 2158733, at *11 (N.D. Tex. June 14, 2012) (citing *Askanase v. Fatjo*, 828 F. Supp. 465, 470 (S.D. Tex. 1993)); *see also Askanase*, 130 F.3d at 666 ("[c]ourts will impute knowledge to the corporation as long as the officer/director is acting on the corporation's behalf") (citing *FDIC v. Ernst & Young*, 967 F.2d 166, 171 (5th Cir. 1992)); *F.D.I.C. v. Shrader & York* (5th Cir. 1993) (describing the "adverse interest" exception to imputation, and noting that that "an agent's knowledge falls within this exception only if the agent acts 'entirely for his own or another's purposes.'") (quoting the Restatement (Second) of Agency § 282(1) (1957)).

The Court therefore **grants** Kors' Motion for Partial Summary Judgment in limited part on the factual issues that the Kors-labeled items seized at the two Alex Trading locations were counterfeit, and on the issue of likelihood of confusion under the trademark and unfair competition laws (Counts I, III, and VI).  The Court otherwise **denies** Kors' Motion for Partial Summary Judgment because there is a fact issue regarding which parties, if any, are liable for violating the trademark laws.

### E.    Remedies

The Lanham Act authorizes district courts "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable."  15 U.S.C. § 1116(a).  To obtain a permanent injunction, Kors must demonstrate:

(1)     that it has suffered an irreparable injury;

(2)     that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

(3)     that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4)     that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006) (so holding in the context of patent law).  The decision to grant or deny a permanent injunction is grounded in principles of equity and is in the discretion of this Court.  *Id.*; 15 U.S.C. § 1116(a).

Kors is not entitled on the current record to a permanent injunction barring Alex Trading from using the Kors Marks.  Though the evidence supports findings of ownership of the Kors Marks, use in commerce, and likelihood of confusion

between the alleged counterfeit marks and the Kors Marks,[143] Kors has not shown as a matter of law that Alex Trading is liable for the acts giving rise to the confusion—namely, the manufacture or sale of items bearing counterfeit Kors Marks.  A permanent injunction is not warranted pending resolution of the issue of Alex Trading's liability.

Moreover, Kors has not shown Alex Trading continues to sell Kors-labeled clothing and accessories.[144]  Kors argues that the Court reasonably can conclude such fragrances are counterfeits because allegedly "counterfeit Michael Kors fragrances were seized from Defendants and [ ] Defendants have not been able to show that they obtained said fragrances from an authorized source."[145]  The Court, however, is unpersuaded that an injunction is currently warranted.  Kors fragrances were not included in the ISC inventory of items HPD seized from Alex Trading in 2013, and were not part of the criminal proceedings.  Moreover, Cordero, on behalf of Hernandez, has submitted testimony and documentary evidence attesting to what she claims are her purchases of authentic items.  The authenticity of the fragrances remains a fact issue.  This issue, in addition to the questions noted above pertaining to who, if any party, is liable for any infringement, requires a trial.  The Court does not reach the other permanent injunction factors.

---

[143]   *See* Section IV(D)(2)(a)(ii), *supra*.  The Court notes that some courts have found likelihood of confusion sufficient to show irreparable injury.  *See Abraham v. Alpha Chi Omega,* 708 F.3d 614, 627 (5th Cir. 2013) ("As to the first factor, a leading treatise states, 'All that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed.'")

[144]   Kors does provide evidence that, as of July 25, 2016, Alex Trading continued to sell Michael Kors fragrance products on its website.  *See* Exh. B-11 to Kors SJ Motion, Printout of Alex Trading Website [Doc. # 35-3].

[145]   Kors SJ Motion [Doc. # 35], at 20.

For these reasons, the Court **denies without prejudice** Kors' request for a permanent injunction.

## V.    CONCLUSION AND ORDER

The Court concludes that the seized items displayed counterfeit Kors Marks, and that there is a likelihood of confusion between the Kors Mark and the counterfeit marks.  There exist, however, genuine questions of material fact for trial regarding whether Alex Trading is liable for the infringing acts of its former employees, and whether Alex Trading continues to sell counterfeit Kors fragrances.  It is therefore

ORDERED that Plaintiff Kors' Evidentiary Objections to Hernandez's Spoliation Motion Evidence [Doc. # 40-7] are **OVERRULED in part** in accordance with this Memorandum and Order.[146]  It is further

ORDERED that Defendant Hernandez's Motion for Sanctions [Doc. # 34] is **DENIED**. It is further

ORDERED that Defendant Hernandez's Motion for Summary Judgment [Doc. # 34] is **DENIED**.  It is further

ORDERED that Defendant Hernandez's Motion for Continuance [Doc. # 34] is **DENIED**. It is further

ORDERED that Defendant Hernandez's Motions to Strike Ralph Richard, Jr., Stephanie Voyles and Joel Voyles [Docs. # 31, # 32, # 33] are **GRANTED in part** in accordance with this Memorandum and Order and **DENIED in all other respects**.  It is further

ORDERED that Defendant Hernandez's Objections to and Motions to Strike Kors' Partial Summary Judgment Evidence [Doc. # 41-2] is **GRANTED in**

---

[146]    In all other respects, the evidentiary objections are **moot**. *See note 54, supra.*

59

**part** in accordance with this Memorandum and Order and **DENIED in all other respects**.  It is further

**ORDERED** that Plaintiff Kors' Motion to Exclude the Expert Testimony of Michael Santoni is **GRANTED**.  It is further

**ORDERED** that Plaintiff Kors' Motion for Partial Summary Judgment [Doc. # 35] is **GRANTED in limited part** in accordance with this Memorandum and Order **and DENIED in all other respects**.  It is further

**ORDERED** that the parties must mediate this case before Docket Call.

SIGNED at Houston, Texas, this **27**[th] day of **October, 2016**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE